## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEFAN BATCHELOR** | : **CIVIL ACTION** |
| | : |
| v. | : **NO. 24-4981** |
| | : |
| **J. SIMMONDS** | : |

### MEMORANDUM

**KEARNEY, J.**                                                                                     **January 16, 2025**

We again return to our correctional officers' use of pepper spray upon incarcerated persons when maintaining security in our correctional facilities. We carefully study these claims to ensure the officers do not use excessive force prohibited by the Eighth Amendment. The correctional officer now moves to dismiss the excessive force and assault and battery claims arguing the incarcerated person did not exhaust his internal administrative remedies within the Facility, the Eleventh Amendment bars official capacity claims, and Pennsylvania sovereign immunity bars the assault and battery claim. We agree with the officer in part; we dismiss the official capacity claims against him with prejudice under the Eleventh Amendment. But the incarcerated person pleads sufficient facts warranting discovery on whether: he exhausted his administrative remedies; the officer's pepper spraying of a person locked in a cell is within the scope of his duties for purposes of sovereign immunity from the assault and battery claim; and, the officer's pepper spraying conduct is excessive. We will proceed into discovery on the Eighth Amendment and assault and battery claims against the officer in his individual capacity as well as the officer's defenses.

## I.    Alleged Pro Se Facts

The Commonwealth currently holds Stefan Bachelor in custody at State Correctional Institution Phoenix.[1] The Commonwealth employs J. Simmonds as a correctional officer at State Correctional Institution Phoenix.[2] Officer Simmonds's partner entered a hospital the afternoon of July 29, 2024 following an altercation with another incarcerated person near Mr. Batchelor's cell.[3] Officer Simmonds appeared outwardly upset following his partner's altercation.[4]

Mr. Batchelor asked Officer Simmonds for permission to use the abuse hotline to report the injured partner for abusing an incarcerated person at an unspecified earlier time.[5] Officer Simmonds yelled "f**k you!" and accused Mr. Batchelor of endangering his injured partner.[6] Officer Simmonds then emptied an entire can of pepper spray into Mr. Batchelor's cell.[7] Officer Simmonds did not give any commands before spraying Mr. Batchelor.[8] Mr. Batchelor sat inside his cell for two hours before being taken for medical treatment.[9] Medical staff did not decontaminate Mr. Batchelor because Officer Simmonds told medical staff nothing had occurred.[10] Mr. Batchelor suffered permanent scar tissue on his skin, enduring damage to his vision, trouble breathing, throat pain, paranoia, and post-traumatic stress disorder.[11]

Mr. Batchelor filed a Medical Sick Call Request on July 29, 2024, at 6:30 PM requesting medical attention.[12] Mr. Batchelor filed an Official Inmate Grievance dated July 29, 2024 with the Facility Grievance Coordinator. The Facility never responded.[13] Mr. Batchelor reported the incident to Security on August 4, 2024.[14] Mr. Batchelor reported the incident to the Grievance Coordinator on August 9, 2024, but the Facility stamped the request received on August 12, 2024.[15] Mr. Batchelor reported the incident to the facility manager, Mr. Terra, on August 12, 2024.[16]

Mr. Batchelor sues Officer Simmonds in his official and individual capacities alleging a violation of his Eighth Amendment rights under section 1983 and for assault and battery under

2

Pennsylvania law.[17] He claims Officer Simmonds sprayed Mr. Batchelor in contravention of prison policy because Mr. Batchelor did not present as a risk to himself or others and Officer Simmonds used pepper spray only to injure Mr. Batchelor.[18]

Mr. Batchelor continues to suffer from fear of being attacked by corrections officers and physical effects from the attack, including poor eyesight.[19] Mr. Batchelor seeks $30,000 in compensatory damages, $30,000 in punitive damages, and a permanent relocation to a different correctional institution.[20]

## II. Analysis

Officer Simmonds now moves to dismiss the Complaint arguing: (1) Mr. Batchelor may not proceed because he did not exhaust his administrative remedies under the Prison Litigation Reform Act; (2) he is immune from Mr. Batchelor's official capacity civil rights claim under the Eleventh Amendment; and (3) sovereign immunity precludes Mr. Batchelor's state law claims.[21] Mr. Batchelor argues he did not fail to exhaust because he did not know anything about the status of his grievance until seeing Mr. Simmonds's Motion to dismiss exhibits showing an investigation.[22] But Mr. Batchelor does not counter Officer Simmonds's immunity arguments.[23]

We find Mr. Batchelor's official capacity claims against Officer Simmonds are barred by Eleventh Amendment immunity as a matter of law. But Mr. Batchelor may proceed on his individual claims. We find consideration of exhaustion under the Prison Litigation Reform Act premature at this stage. And we cannot, at this stage, find sovereign immunity bars Mr. Batchelor's claims for assault and battery because we cannot today find Officer Simmonds indisputably did not act within the scope of his duties. Mr. Batchelor sufficiently pleads state law claims for assault and battery and pleads a civil rights claim for excessive force under the Eighth Amendment against Officer Simmonds in his individual capacity.

### A. We cannot today determine whether Mr. Batchelor exhausted his administrative remedies under the Prison Litigation Reform Act.

Congress, under the Prison Litigation Reform Act, requires incarcerated persons exhaust all available remedies before filing suit in federal court.[24] Incarcerated persons must "exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process."[25] Congress requires proper exhaustion, which "demands compliance with an agency's deadlines and other procedural rules."[26] The correctional facility sets the steps required for compliance with grievance procedures.[27] Incarcerated persons are not required to plead and prove exhaustion in their initial complaint; failure to exhaust is an affirmative defense the defendant must plead and prove.[28]

The Pennsylvania Department of Corrections has an Official Inmate Grievance System governed by Administrative Directive 804.[29] The official process entails "(1) an initial review by a grievance officer (DC-ADM 804 § 1(C)); (2) an appeal to the facility manager (DC-ADM 804 § 2(A)); and (3) an appeal to the statewide chief grievance officer (DC-ADM 804 § 2(B))."[30]

Mr. Batchelor attached an undated Official Inmate Grievance form to his Complaint, as excerpted[31]:

B. List actions taken and staff you have contacted, before submitting this grievance.

*[handwritten]* IPAW AND BE HERE CORRECTIONAL OFFICERS WHO ABIDE BY THE CODE OF ETHICS, WHO WILL GIVE A FULL DAY'S LABOR FOR A FULL DAY'S PAY, GIVING TO THE PERFORMANCE OF HIS DUTIES HIS EARNEST EFFORT AND BEST NATURE.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator _____   Date _____

WHITE Facility Grievance Coordinator Copy   CANARY File Copy   PINK Action Return Copy
GOLDEN ROD Inmate Copy

Mr. Batchelor alleges he filed this Official Inmate Grievance form and then never heard back from the Facility staff about the investigation.[32] Officer Simmonds counters Mr. Batchelor never filed the Official Inmate Grievance with the Facility Grievance Coordinator.[33] Officer Simmonds

presents an affidavit from a Facility official.[34] Officer Simmonds then argues Mr. Batchelor filed a *different* Official Inmate Grievance containing the same information dated July 30, 2024, as excerpted[35]:

B. List actions taken and staff you have contacted, before submitting this grievance.

*[handwritten:]* 1) Giving to me. 2) Remove him from LBlock or Suspend. 3) Investigate: 4) This may Result in more Retaliation.

*[handwritten right:]* Relief Sought; Please Preserved and Save Video Footage for Appealing Purpose Purposes

Your grievance has been received and will be processed in accordance with DC-ADM 804

Signature of Facility Grievance Coordinator                    Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

Superintendent's Office
SCI Phoenix

JUL 3 1 2024

Mr. Simmonds argues the Facility told Mr. Batchelor it would need additional time to investigate his claim on August 1, 2024.[36] Mr. Batchelor sued on September 18, 2024.[37] Officer Simmonds argues Mr. Batchelor did not receive a response to his grievance until November 14, 2024 so Mr. Batchelor filed suit too early.[38] But it is not clear to us (1) what happened to the Official Inmate Grievance attached to Mr. Batchelor's Complaint, or (2) why an investigation required by policy to take no longer than a few weeks ended up taking over three months.[39]

The defense of failure to exhaust can, in some situations, "be raised as a basis for dismissal under Rule 12(b)(6) if the inmate's failure to exhaust is apparent from the face of the complaint[.]"[40] But "here the Commonwealth Defendant[] relied not on [Mr. Batchelor's] allegations accepted as true but [many] documents submitted under cover of [a] prison-official declaration[]."[41] "We thus characterize and assess [Officer Simmonds's] motion, insofar as it pressed the exhaustion defense," as a premature motion for summary judgment.[42]

5

Missing facts preclude our review under the deferential motion to dismiss standard. Considering Officer Simmonds's exhaustion grounds is premature at this juncture. We deny the exhaustion grounds without prejudice to be renewed after discovery.

### B. Eleventh Amendment immunity bars Mr. Batchelor's official capacity claims against Officer Simmonds.

Officer Simmonds seeks dismissal of Mr. Batchelor's constitutional claim brought against Officer Simmonds in his official capacity under Eleventh Amendment immunity.[43] We agree the Eleventh Amendment bars Mr. Batchelor's official capacity claims for money damages.[44]

"[A]n official capacity suit against a state official is really a suit against the state[.]"[45] States and state actors are immune from suits for money damages under the Eleventh Amendment unless: (1) the State waives its immunity; (2) Congress specifically abrogates the states' immunity; or (3) the plaintiff seeks injunctive relief against an individual.[46] "The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983."[47] And Mr. Batchelor does not seek injunctive relief against Mr. Simmonds.[48]

Officer Simmonds is a Commonwealth employee entitled to Eleventh Amendment immunity from damages suit in his official capacity. This immunity only applies to suits seeking damages against state actors in their official capacity and does not bar Mr. Batchelor's claims against Officer Simmonds in his individual capacity.[49] We dismiss Mr. Batchelor's damages claims under section 1983 and for common law assault and battery against Officer Simmonds in his official capacity with prejudice.

### C. We cannot today find sovereign immunity under Pennsylvania Law bars Mr. Batchelor's state law tort claims against Officer Simmonds.

Mr. Batchelor seeks to bring state law assault and battery claims against Officer Simmonds. Officer Simmonds argues sovereign immunity bars these claims. We disagree.

6

The Commonwealth and its employees generally enjoy sovereign immunity from suit under Pennsylvania law.[50] "Unlike Eleventh Amendment immunity, sovereign immunity 'applies to Commonwealth employees in both their official and individual capacities.'"[51] "Unless waived, immunity attaches for actions undertaken *within the scope* of the Commonwealth party's duties."[52] The Pennsylvania General Assembly waived immunity for claims involving certain enumerated negligent acts by Commonwealth parties.[53] The torts of assault and battery are intentional torts under Pennsylvania law.[54] The Pennsylvania Supreme Court five years ago held "claim[s] of intentional wrongdoing . . . cannot constitute the type of negligent conduct for which the General Assembly has waived its immunity from liability."[55] Because none of the exceptions are relevant to the assault and battery claims, the dispositive question becomes whether Officer Simmonds acted within the scope of his duties.

Pennsylvania courts apply the Restatement (Second) of Agency to determine whether conduct is within the scope of employment for purposes of sovereign immunity.[56] "Conduct is within the scope if '(a) it is of the kind he is employed to perform, (b) it occurs substantially within the authorized time and space limits, (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the force is not unexpected by the master.'"[57] Pennsylvania courts "have long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury . . . [and] explained that the only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute."[58]

Mr. Batchelor's alleged facts allow us to plausibly infer the challenged conduct: is the type the Commonwealth employed Officer Simmonds to perform because he had pepper spray on his person as needed; the conduct occurred substantially within the authorized time and space limits

7

because the attack occurred within the Facility while Officer Simmonds worked on duty; and, the force is not unexpected by the Facility because it gave the pepper spray to Officer Simmonds to presumably use as warranted during his duties. But we cannot determine whether Officer Simmons acted even in part by a purpose to serve the Facility. Mr. Batchelor alleges Officer Simmonds sprayed him with an entire can of pepper spray because Officer Simmonds became upset about another incarcerated person attacking his partner earlier the same day. And our colleagues have found "a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification."[59]

We cannot today determine whether Mr. Batchelor provoked Officer Simmonds and we must take all facts pleaded as true. Sovereign immunity will not bar the intentional tort claims against Officer Simmonds at this early stage subject to discovery.[60]

## III. Conclusion

We dismiss with prejudice Mr. Batchelor's claims against Officer Simmonds in his official capacity. We deny Officer Simmonds's Motion to dismiss on Prison Litigation Reform Act exhaustion grounds as premature. We deny Officer Simmonds's Motion to dismiss on sovereign immunity grounds to be renewed after discovery. Mr. Batchelor may proceed on his Eighth Amendment excessive force civil rights claim and state law assault and battery claim against Officer Simmonds in his individual capacity.

---

[1] ECF 1 at 1.

[2] *Id.* at 2.

[3] *Id.* at 3 ¶ 2.

[4] *Id.* at 3 ¶ 1.

---

[5] *Id.* at 3 ¶ 3.

[6] *Id.* at 3 ¶ 4.

[7] *Id.* at 3 ¶ 4.

[8] *Id.* at 4 ¶ 11.

[9] *Id.* at 3 ¶ 5.

[10] *Id.* at 3 ¶¶ 6, 8.

[11] *Id.* at 1, 3 ¶ 7.

[12] *Id.* at 18. This document is unstamped.

[13] *Id.* at 17. This document is unstamped.

[14] *Id.* at 15. This document is unstamped.

[15] *Id.* at 16.

[16] *Id.* at 13–14. This document is unstamped.

[17] *Id.*.

[18] *Id.* at 4 ¶¶ 10–13.

[19] *Id.* at 6 ¶ 31.

[20] *Id.* at 2, 8.

[21] ECF 18 at 3. The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[22] ECF 24 at 2.

[23] *See id. generally.* Because Mr. Batchelor is proceeding pro se, we construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 703 F.3d 239, 244–45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned pro se litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). We "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

[24] 42 U.S.C. § 1997e(a).

[25] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[26] *Id.* at 90.

[27] *Jones v. Bock*, 549 U.S. 199, 218 (2007).

[28] *Id.* at 216.

[29] *Estien v. Showalter*, 723 Fed. Appx. 93, 96 (3d Cir. 2018); DC-ADM 804, available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf.

[30] *Talley v. Pennsylvania Dep't of Corr.*, No. 19-1589, 2024 WL 1253626, at *8 (E.D. Pa. Mar. 21, 2024).

Officer Simmonds argues DC-ADM 804 is the exclusive avenue for exhaustion under the Prison Litigation Reform Act, but our colleagues have found there are various reporting avenues available to incarcerated persons in Pennsylvania. *See, e.g., Daniel v. Wetzel*, No. 1:15-00850, 2016 U.S. Dist. LEXIS 39547, at *14–16 (M.D. Pa. Mar. 24, 2016) (citing *Knauss v. Shannon*, No. 08-1698, 2010 WL 569829, at *7 (M.D. Pa. Feb. 12, 2010)) ("Grievances alleging abuse of an inmate by a staff member or other noninmate may be addressed through the DC-ADM 804 grievance process,

or they may also be addressed by alternative reporting methods set forth in DC-ADM 001."). As this issue is not ready for our consideration at this time, we make no finding as to which of the reporting procedures available to Mr. Batchelor qualify for Prison Litigation Reform Act exhaustion.

[31] ECF 1 at 17.

[32] *Id.* at 4 ¶ 17.

[33] ECF 18 at 12.

[34] ECF 18-2.

[35] ECF 18 at 12, ECF 18-1 at 4.

[36] ECF 18 at 12, ECF 18-1 at 3.

[37] ECF 1.

[38] ECF 18 at 12–13.

[39] *See, e.g.*, DC-ADM 804 §1(C)(5)(g)–(h) ("[T]he response shall be provided to the inmate within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System; and . . . an extension of ten additional working days may be requested from the Facility Grievance Coordinator/designee if the investigation of the grievance is ongoing.").

[40] *Ryder v. Bartholomew*, 715 F. App'x 144, 147 n.4 (3d Cir. 2017).

[41] *Id.*

[42] *Id.*; Fed. R. Civ. P. 12(d). Officer Simmonds argues we can consider the materials attached to his Motion to dismiss without converting it to a Motion for summary judgment because the appended evidence of exhaustion is "integral" to Mr. Batchelor's Complaint. ECF 18 at 7–8. But evidence of an affirmative defense is not integral to Mr. Batchelor's constitutional and tort claims. And, while we do not doubt there are cut and dry situations where evidence of failure to exhaust can be appropriately considered on a motion to dismiss, this is not one.

[43] ECF 18 at 8–9.

[44] *Clark v. Pennsylvania*, 885 F. Supp. 694, 714 (E.D. Pa. 1995) ("States are immune from suits based on State law claims in federal court under Eleventh Amendment protection." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984))). Officer Simmonds only raises Eleventh Amendment immunity as to Mr. Batchelor's section 1983 claim, but we may consider Eleventh Amendment issues *sua sponte*. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 417 (3d Cir. 2003) ("[A] court *sua sponte* may raise Eleventh Amendment issues." (citing *Parella v. Ret. Bd. of Rhode Island Emps.' Ret. Sys.*, 173 F.3d 46, 54 (1st Cir. 1999))).

[45] *Doe v. Schorn*, 711 F. Supp. 3d 375, 386 (E.D. Pa. 2024), *appeal dismissed as moot sub nom. Pepper v. Att'y Gen. Pa.*, No. 24-1261, 2024 WL 5102861 (3d Cir. Dec. 13, 2024).

[46] *Presbury v. Correct Care Sol. Inc.*, No. 22-331, 2022 WL 1787333, at *9–10 (E.D. Pa. May 31, 2022).

[47] *Petsinger v. Pa. Dep't of Transp.*, 211 F.Supp.2d 610, 613 (E.D. Pa. 2002) (quoting *O'Hara v. Ind. Univ. of Pa.*, 171 F.Supp.2d 490, 495 (W.D. Pa. 2001)).

[48] Mr. Batchelor seeks separation from SCI Phoenix, which would constitute a form of equitable relief, but we cannot award this remedy. Our Court of Appeals has held sentenced inmates in Pennsylvania have no right to injunctive relief from transfer from one prison in Pennsylvania to another prison in Pennsylvania. *Cobb v. Aytch*, 643 F.2d 946, 956–57 (3d Cir. 1981). And our colleagues have noted "[t]he public has a strong interest in avoiding judicial interference with the efficient operation its prison system." *Forrest v. Nedab*, No. 97-4442, 1999 WL 552546, at *5 (E.D. Pa. June 29, 1999).

[49] *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

[50] 1 PA. STAT. AND CONSOL. STAT. § 2310.

[51] *Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 606 (M.D. Pa. 2013) (quoting *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa.2008)).

[52] *Sutton v. Bickell*, 220 A.3d 1027, 1035 (Pa. 2019) (citing *Justice v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019)) (emphasis added).

[53] *Id.* (first citing 42 PA. STAT. AND CONSOL. STAT. § 8522(a); then citing 42 PA. STAT. AND CONSOL. STAT. § 8522(b)). The enumerated exceptions for which the General Assembly waives sovereign immunity include (1) vehicle liability; (2) medical-professional liability; (3) actions arising from the care, custody, or control of personal property in the Commonwealth's control; (4) actions arising from Commonwealth real estate, highways, and sidewalks; (5) actions arising from potholes and other dangerous conditions; (6) actions arising from the care, custody, or control of animals in the Commonwealth's control; (7) actions arising from liquor store sales; (8) actions arising from National Guard activities; (9) actions involving the administration, manufacture, and use of a toxoid or vaccine not manufactured in the Commonwealth, subject to certain conditions; and (10) certain actions involving sexual abuse. 42 PA. STAT. AND CONSOL. STAT. § 8522(b).

[54] *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (Pa. Super. 1950)).

[55] *Sutton*, 220 A.3d at 1035 (citation omitted).

[56] *Justice*, 208 A.3d at 1068.

[57] *Gillmore v. Lamas*, No. 19-5571, 2021 WL 5882093, at *9 (E.D. Pa. Dec. 10, 2021) (citing RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958)).

[58] *Justice*, 208 A.3d at 1068.

[59] *Barksdale v. Dep't of Corr.*, No. 23-263, 2024 WL 5238210, at *6 n.3 (W.D. Pa. Dec. 27, 2024) (citing *Allen v. Co. Robert Hollowood*, No. 19-1258, 2024 WL 36967, at *4 (W.D. Pa. Jan. 3, 2024)).

[60] Officer Simmonds recites the Rule 12(b)(6) standard on a motion to dismiss (ECF 18 at 5–6) but does not challenge the sufficiency of Mr. Batchelor's pleading of state law assault and battery claims or an Eighth Amendment excessive use of force civil rights claim. We do not venture into reviewing arguments not made to us.